UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEIGE WIEDER, et al.,

                          Plaintiffs,

               v.

ADVANCED BIONICS LLC,

                       Defendant.

24 Civ. 8495 (DEH) (GWG)

OPINION & ORDER

DALE E. HO, United States District Judge:

Plaintiffs Feige and Joel Wieder bring various New York state law claims against Defendant Advanced Bionics LLC. In substance, Plaintiffs claim that their infant child L.W. received a HiRes Ultra 3D cochlear implant manufactured by Advanced Bionics, but that it was defectively designed and/or manufactured, allowing body fluid to enter an electrode inside of the implant, leading to short circuiting and device failure. First Am. Compl. ("FAC") ¶¶ 63-67, 107-21, 211-13, 252-58, ECF No. 21. L.W. subsequently received a second cochlear implant manufactured by a different company, but the Wieders allege that, due in part to scarring attributable to the Advanced Bionics implant, L.W.'s new implant fails to operate properly, which has permanently affected his ability to hear, speak, and learn. *See id.* at ¶¶ 118, 125-27, 131.

On November 20, 2025, Magistrate Judge Gabriel W. Gorenstein issued a Report and Recommendation (the "Report" or "R. & R.") recommending that Advanced Bionics's Motion to Dismiss, ECF. No. 23, be granted as to Counts One through Six, and denied as to Counts Seven through Nine. *See* R. & R., ECF No. 35. Before the Court are Plaintiffs' objections to the portions of the Report recommending dismissal of Counts One through Six. *See* Pls.' Obj., ECF No. 36. For the reasons stated below, the Report's recommendations are **ADOPTED IN FULL**.

## BACKGROUND

Familiarity with the factual background and relevant procedural history of this case as set forth in the Report is assumed. *See* R. & R. at 2-5. This action is referred to Magistrate Judge Gorenstein for general pretrial supervision and for report and recommendation on dispositive motions. *See* Order of Reference to Magistrate Judge, ECF No. 8. On March 18, 2025, Defendant moved to dismiss, ECF No. 23. On November 20, 2025, Magistrate Judge Gorenstein issued a Report and Recommendation addressing that motion. *See* R. & R. On December 4, 2025, Plaintiffs filed their Objections to the Report. *See* ECF Nos. 36, 37. On December 18, 2025, Advanced Bionics filed its Opposition to Plaintiffs' Objections. *See* Def.'s Opp'n, ECF No. 38. After reviewing the Report and the parties' objections and oppositions, the Court adopts the Report's recommendations to dismiss Counts One through Six of the Complaint and to deny the Motion to Dismiss as to Counts Seven through Nine.

## LEGAL STANDARD

### I.  Standard of Review

United States Magistrate Judges may "hear dispositive motions and make proposed findings of fact and recommendations, generally in the form of a Report and Recommendation." *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 67 (S.D.N.Y. 2013).[1] A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" when reviewing a report and recommendation. 28 U.S.C. § 636(b)(1)(C). Parties may file "written objections" to the magistrate judge's "proposed findings and recommendations." *id.*; *see* Fed. R. Civ. P. 72(b) (same). In reviewing objections, "the district

---

[1] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

court has an obligation to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made." *Vaccariello*, 295 F.R.D. at 67. The district judge has discretion when weighing the recommendations and proposed findings. *See United States v. Raddatz*, 447 U.S. 667, 683 (1980) (holding that the "delegation does not violate Art. III so long as the ultimate decision is made by the district court").

The parties' objections to a report and recommendation "are to be specific and are to address only those portions of the proposed findings to which [a] party objects." *Vaccariello*, 295 F.R.D. at 67. "[M]erely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers]" do not trigger *de novo* review. *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sep. 30, 2002); *see also Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009). Further, "a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019); *see Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.").

When there is no timely objection by either party, the district court may accept the report and recommendation if "there is no clear error on the face of the record." *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y.1985). If a party "makes only conclusory or general objections, or simply reiterates the original arguments, the [c]ourt will review the [r]eport strictly for clear error." *Pinkney v. Progressive Home Health Servs.*, No. 6 Civ. 5023, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008).

## II.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In assessing the complaint, "[a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07.  The Court must, however, disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

The Report recommended that Advanced Bionics's Motion to Dismiss be granted with respect to Counts One through Six, and denied with respect to Counts Seven through Nine. Plaintiffs object to the recommendations to dismiss Counts One through Six, which the Court addresses in turn below.  The Court then addresses the portions of the Report recommending that the Motion to Dismiss be denied as to Counts Seven through Nine of the FAC, to which neither party has objected.

At a high level, the Report recommended dismissing Counts one through Six as preempted by the Medical Device Amendments ("MDA") to the federal Food, Drug and Cosmetic Act ("FDCA").  Generally speaking, "to survive express preemption under the MDA, state-law tort claims must not impose requirements in addition to those imposed by federal law and they also must be 'premised on a violation of FDA regulations.'" R. & R. at 9 (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008)).  "[T]he state duties in such a case 'parallel,' rather than add to, federal requirements." *Id.* (quoting *Riegel*, 552 U.S. at 330).  Here, the Report recommended dismissal of various state law claims because Plaintiffs failed to allege violations of relevant

federal regulations.  The Wieders' objections to these recommendations are discussed in turn below.

## I.    Count One: Manufacturing Defect

The Report recommended that the Wieders' New York strict liability claim for a manufacturing defect be dismissed as preempted.  *See* R. & R. at 10-14.  The Report reasoned that the Wieders did not adequately plead that Advanced Bionics had failed to comply with applicable Current Good Manufacturing Practice ("CGMP") requirements set forth at 21 C.F.R. § 820, and that their manufacturing defect claim was therefore preempted.[2]

The Wieders raise several objections on this point.  First, they argue that they stated a violation of CGMP requirements, by alleging that the silicone sealing of the implant is performed by hand and is not subject to quality control.  *See* Pls.' Obj. at 3-4.  But the Wieders still do not allege any specific violation of the applicable CGMP requirements.  The fact that the silicone sealing on the device was applied by hand does not, by itself, necessarily imply that there was a violation of any particular applicable CGMP requirement.[3]  And merely saying that there was no quality control is also insufficient to establish a violation.  *Cf. Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 406-07 (S.D.N.Y. 2013) (holding that allegation that defendants manufactured

---

[2] The Report noted that there is authority going both ways on the question whether CGMP requirements are the sort of federal requirements relevant to the express preemption analysis, including within the Second Circuit.  *See* R. & R. at 12 (citing, *inter alia*, *Gallego v. Tandem Diabetes Care, Inc.*, 776 F. Supp. 3d 119, 136 (E.D.N.Y. 2025) (explaining the split of authority in the Second Circuit)).  The Court need not resolve this question here as it concludes that, even assuming that CGMP requirements are relevant to the express preemption analysis, the Wieders have not adequately alleged a violation of any such requirements.  *See id.*

[3] In their objections, the Weiders argue that the hand application of silicone sealing violates 21 C.F.R. § 820.70(a)'s requirements that manufacturing processes be validated and reproducible, *see* Pls.' Obj. at 5, but they did not raise this argument in their briefing on the Motion to Dismiss.  The Court declines to consider this argument, which was raised for the first time in the Wieders' objections to the Report.  *See Piligian*, 490 F. Supp. 3d at 716.

the device at issue "without thorough and proper testing" was not a sufficiently "concrete factual allegation[]" to support a claim).  The Wieders protest that they cannot "state precisely what happened during the manufacturing process . . . without access to the premarket approval ("PMA") documents and further discovery."  Pls.' Obj. at 4.  But, as explained in more detail below with respect to their design defect claim, plaintiffs bear the burden of demonstrating a specific deviation from federal regulatory requirements in order to state a claim in this context, and the Wieders have not done so here.

Next, the Wieders argue that Advanced Bionics's voluntary recall of un-implanted HiRes Ultra 3D implants renders their allegation of a violation of a federal requirement plausible.  *See* Pls.' Obj. at 5-6.  But the Report cited numerous cases holding that a voluntary recall alone does not establish a violation of federal requirements.  *See* R. & R. at 14 (citing, *inter alia*, *Warmoth v. Medtronic, Inc.*, No. Civ. 21-712, 2023 WL 3938464, at *5 (W.D. Okla. June 9, 2023)).  The Report also acknowledged several cases cited by the Wieders finding that plaintiffs had sufficiently alleged a manufacturing defect based in part on a voluntary recall; but the recalls in those cases were accompanied by documents acknowledging the possibility of manufacturing defects.  *See* R. & R. at 13 (citing, *inter alia*, *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 157-58 (S.D.N.Y. 2011) (describing letter from FDA warning that manufacturer failed to comply with CGMP requirements, and notice from manufacturer accompanying recall acknowledging manufacturing defect)).  Having reviewed that authority, this Court agrees with the Report that these cases are inapposite.

The Wieders also argue that there is an inconsistency in the Report's conclusion that the recall, combined with a study showing that the HiRes Ultra 3D line of implants was subject to a high failure rate, could support their negligence claims, but not their manufacturing defect claim.  *See* Pls.' Obj. at 6.  But there is no inconsistency in the Report's conclusion that these facts did not

6

establish a violation of federal regulations (for purposes of the Wieders' manufacturing defect claim), but that they could establish that the implant should have been explanted (for purposes of their negligence claim).

Accordingly, the Wieders' objections to the Report's recommendation that their manufacturing defect claim should be dismissed are overruled.

## II.    Count Two: Design Defect

The MDA preempts state law claims for a design defect regarding a device that has received Premarket Approval (PMA).  *See Simon*, 990 F. Supp. 2d at 405.  The Report noted, however, that the FDA approved both the HiRes Ultra 3D implant line and its PMA supplement. *See* R. & R. at 15 (citing FAC ¶¶ 55, 296).  Accordingly, the design defect claim is preempted.

Here, the Wieders raise two objections.  First, they assert that their device must have differed from the design approved by the FDA in the PMA supplement, but that they cannot identify precisely how because they "are not privy to the requisite PMA documents," which are privileged.  Pls.' Obj. at 8.  While courts have acknowledged the difficulties for plaintiffs in attempting to allege specific defects or deviations from federal regulatory requirements without access to confidential PMA documents, *see, e.g.*, *Gelber*, 788 F. Supp. 2d at 157, Plaintiffs do not cite authority for the proposition that they need not allege a specific deviation from FDA requirements in order to avoid preemption.  In fact, "a plaintiff bears the burden of alleging deviations from [applicable FDA] safety standards in order to avoid preemption and assert state tort-law causes of action."  *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 105 (D. Conn. 2014) (citing *Riegel*, 552 U.S. at 322-23).  Indeed, in *Rosen v. St. Jude Medical, Inc.*, 41 F. Supp. 3d 170 (N.D.N.Y. 2014), which the Wieders cite for the proposition that courts must be mindful of the fact that plaintiffs often do not have access to confidential PMA documents, *see* Pls.' Obj. at 8-9, the court sustained the plaintiffs' claim because the plaintiffs supported their

allegations with two FDA enforcement letters and other materials indicating a specific violation of applicable federal requirements. *See Rosen*, 41 F. Supp. 3d at 183. The Wieders have not pointed to anything comparable here.

Next, the Wieders argue that, by permitting hand application of silicone, the design of the device necessarily deviated from applicable CGMPs because it allowed for "variability and lacked uniformity controls." Pls.' Obj. at 9. But to the extent that they argue that the inherent variability of a hand application process inevitably results in deviations from the specifications approved by the FDA, this is not a *design* defect claim, which, under New York law, must state that "the alleged product flaw arises from an intentional decision by the manufacturer to *configure* the product in a particular way." *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 735 n.3 (N.Y. 1995) (emphasis added). Rather, this argument sounds in the form of a manufacturing defect, which alleges that there was "some mishap in the manufacturing process itself." *Gelber*, 788 F. Supp. 2d at 155. And for the reasons explained above, Plaintiffs have failed to state a manufacturing defect claim.

Accordingly, the Wieders' objections to the Report's recommendation that their design defect claim be dismissed are overruled.

### III.   Count Three: Breach of Implied Warrant of Merchantability

The Report recommended that, in light of the recommendations discussed above, the Wieders' claim for breach of implied warranty of merchantability be dismissed because "[t]he parties agree that the Wieders' claim for breach of implied warranty of merchantability rises or falls with their manufacturing defect and design defect claims." R. & R. at 17. The Wieders object, denying that they "agree" on this point and citing various cases holding that a breach of warrantability claim can survive even where a strict liability claim (like the manufacturing and

8

design defect claims here) fail.  *See* Pls.' Obj. at 10 (citing, *inter alia*, *Denny*, 662 N.E.2d at 736).[4]

Advanced Bionics argues that the Weiders did not make this argument on the underlying motions,

but more importantly notes that the cases cited by the Weiders do not take into account the federal

preemption principles at issue in this case.  *See* Def.'s Opp'n at 13.

Advanced Bionics is correct.  In the *Denny* case, cited by the Weiders, the New York Court

of Appeals held that, as a matter of New York state law, the elements of claims for strict products

liability and breach of implied warranty are not coextensive, and that "it is possible to be liable for

breach of implied warranty even though a claim of strict products liability has not been

satisfactorily established."  662 N.E.2d at 731.  But that is not the issue here.  As Advanced Bionics

notes, the MDA preempts any state law claim for breach of implied warranty when the FDA has

approved the device at issue.  *See, e.g.*, *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 252

(E.D.N.Y. 2014).  Here, the Weiders' claim for breach of implied warranty fails for the same

reason that its design defect claim fails: the HiRes Ultra 3D implant was approved by the FDA.

Accordingly, the Weiders' objection to the Report's recommendation that their claim for

breach of implied warranty be dismissed is overruled.

## IV.    Count Four: New York General Business Law §§ 349-50

The Report recommended that the Weiders' claims under the New York General Business

Law ("GBL") also be dismissed on federal preemption grounds.  The Report noted that, where a

plaintiff challenges under state law labelling, marketing, or other consumer-oriented materials

approved by the FDA, such claims are preempted unless the materials were inconsistent with FDA-

---

[4] The Wieders argue that, in recommending that their breach of implied warranty of
merchantability claim be dismissed, the Report improperly applied "summary-judgment
principles at the pleading stage," Pls.' Obj. at 10, but do not explain this argument.  The Court
rejects this contention.  The Wieders have failed to state a claim for breach of implied warranty
of merchantability because, as explained above, it is preempted by federal law.  This is a failure
of the allegations themselves, and has nothing to do with the summary judgment standard.

approved language or labelling.  *See* R. & R. at 19 (citing *Tillet v. CooperSurgical, Inc.*, No. 23 Civ. 6031, 2023 WL 4704091, at *6 (W.D.N.Y. July 24, 2023)).  The Report concluded that, here, because the Wieders have made no such allegation, their GBL claim is preempted.  *See id.* at 20.

The Wieders object, noting that they have pled the elements of a GBL claim, and again protest that they cannot allege whether the materials in question deviate from those approved by the FDA, because they lack access to the relevant PMA documents.  *See* Pls.' Obj. at 12.  But while district courts must "keep in mind" the fact that product-specific information is confidential under federal law, the standard notice pleading requirements of federal law still apply in this context.  *Croci v. Zoll Med. Corp.*, No. 24 Civ. 2137, 2025 WL 2307728, at *3 (S.D.N.Y. Aug. 11, 2025).  Plaintiffs have not pled that any of Advanced Bionics's materials regarding the HiRes Ultra 3D implant are inconsistent with what the FDA has approved.  *See Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) ("[U]sing the NYGBL to attack the [defendant's] FDA-approved label would run afoul of the MDA's preemption provision.").  Again, the "plaintiff bears the burden" of establishing a violation of applicable federal safety rules in order to avoid preemption under the MDA.  *See McConologue*, 8 F. Supp. 3d at 105.  The Wieders have not done so here.

Accordingly, the Wieders' objection to the Report's recommendation that their GBL claim be dismissed is overruled.

## V.    Count Five: Fraud

As with the other claims discussed above, the Report recommended that the Wieders' fraud claim be dismissed as preempted.  *See* R. & R. at 20-21.  The Wieders object that they have "plausibly alleged that defendant's statements went beyond the scope of FDA approval and presented misleading assurances of safety and performance not contained in the PMA, which, if proven, would not be preempted . . . ."  Pls.' Obj. at 13-14.  But they do not support this conclusory

10

assertion by pointing to any specific statements that were allegedly fraudulent; nor do they describe how any of Advanced Bionics's statements "went beyond the scope of FDA approval" or concerned safety or performance "not contained in the PMA." *Id.* They have therefore not established that these claims escape preemption. As the Report noted, the authority that the Wieders cited in their opposition brief, *Kaemmlein v. Abbott Lab'ys*, 564 F. Supp. 3d 58, 73 (E.D.N.Y. 2021), involved allegations that the defendant made fraudulent representations to the FDA itself, which is not the case here. And, to the extent the Wieders allege that Advanced Bionics should have issued warnings that go beyond those required by the FDA, that is precisely the kind of claim that is preempted by the MDA. *See Dains v. Bayer HealthCare LLC*, No. 22 Civ. 208, 2022 WL 16572021, at *2, 5 (N.D.N.Y. Nov. 1, 2022).

Accordingly, the Wieders' objection to the Report's recommendation that their fraud claim be dismissed is overruled.

## VI.    Count Six: Negligent Failure to Warn

Under New York law, "[t]o prevail on a claim for negligent failure to warn, a plaintiff must demonstrate that (1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm." *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011). The Wieders appear to press multiple theories with respect to their negligent failure to warn claim, including that Defendant's warnings deviated from language approved by the FDA; that Defendant should have included language going beyond FDA-approved labeling; and that Defendant failed to inform the Wieders, their doctors, and the medical community at large, of the risks associated with the implant, including through non-compliance with federal reporting requirements. *See* R. & R. at 22-23. The Report recommended dismissing this claim as asserted under each of these various theories of liability. *See id.* at 22-25.

At this stage, the Wieders object only to the Report's recommendation to dismiss their challenge to Advanced Bionics's alleged non-compliance with federal PMA monitoring and reporting requirements. *See* Pls.' Obj. at 14-17.[5]  With respect to that theory, the Report recommended dismissal on two grounds.  First, the Report recommended it be dismissed as preempted because New York law does not provide a cause of action for a manufacturer's failure to report adverse events to the FDA.  R. & R. at 23-24.  Second, the Report recommended it be dismissed because "the allegations in the FAC that Advanced Bionics failed to make required reports to the FDA are conclusory and in part contradictory."  *Id.* at 24-25.

The Court adopts the Report's recommendation to dismiss this claim based solely on the second reason—i.e., that the Wieders have failed to state this claim due to contradictory (or otherwise insufficient) factual allegations.  The Report noted that the Wieders made contradictory allegations with respect to the third element of this claim—that is, a failure to provide a warning.  *See* R. & R. at 24-25.  In their objections, the Wieders argue that the Report erroneously resolved factual ambiguities against them, and note that they have the right to plead alternative theories.  *See* Pls.' Obj. at 17.  The Wieders allege that Advanced Bionics improperly reported incidents to the FDA as "product problems" instead of as "adverse events," in order to evade scrutiny or FDA action—but as the Report noted, this was flatly contradicted by other allegations in the FAC that the FDA received "multitudes of adverse event reports."  R. & R. at 24 (quoting FAC ¶¶ 226, 228).  A court is "not required to accept as true pleadings that are directly contradicted by other factual statements in the Amended Complaint."  *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 424 (S.D.N.Y. 2010).

---

[5] The Court has reviewed the Report's recommendations that the Wieders did not object to with respect to their other theories of negligent failure to warn and finds no error, clear or otherwise, and adopts the Report's conclusions.

The Wieders protest that inconsistencies in their pleadings are the result of "incomplete information," Pls.' Obj. at 17, but that cannot explain away their plainly contradictory factual allegations, which need not be credited by the Court. The Wieders also object that the Report discounted their allegations that prior cochlear implant lines manufactured by Advanced Bionics failed for essentially the same reasons—i.e., moisture intruding into the device. *See id.* at 18. But those allegations do not establish that Advanced Bionics had a duty to warn about the implant line at issue in *this* case.[6] In sum, the Wieders' allegations are contradictory and/or otherwise

---

[6] Though the Court ultimately adopts the Report's recommendation to dismiss this claim, it notes that it does not adopt the Report's reasoning with respect to whether New York law provides a cause of action for a manufacturer's failure to report adverse events to the FDA. "Under the doctrine of 'learned intermediary', the manufacturer of [a] medical device satisfies its duty to warn of potential adverse effects when it *adequately* warns medical professionals who use the device in the treatment of patients." *Banker v. Hoehn*, 718 N.Y.S.2d 438, 440 (N.Y. App. Div. 2000) (emphasis added). Given the FDA's reach, numerous courts have held or otherwise acknowledged that a manufacturer's duty to warn medical professionals may include notifying the FDA. *See, e.g.*, *A.F. v. Sorin Grp. USA, Inc.*, 346 F. Supp. 3d 534, 544 (S.D.N.Y. 2018) (holding that "a manufacturer's duty to take steps that are reasonably necessary to warn the medical community may include warning the FDA as required by the MDA"); *Rosen v. St. Jude Med., Inc.*, 41 F. Supp. 3d 170, 184-85 (N.D.N.Y. 2014) (rejecting defendants' argument that "in New York, a device manufacturer is only required to report to doctors, not the FDA" because the FDA disseminates information about adverse events to physicians); *Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 251 (S.D.N.Y. 2013) (holding that a claim of failure to warn based on a failure to comply with FDA reporting requirements "successfully threads the needle" to avoid preemption).

In reaching a contrary conclusion, the Report relied heavily on a decision from the Western District of New York, *Tillet v. CooperSurgical, Inc.*, No. 23 Civ. 6031, 2023 WL 4704091 (W.D.N.Y. July 24, 2023). There, the court concluded that "[t]he duty to warn under New York law is 'different from and in addition to' the duty to supply adverse event reports to the FDA" because "the FDA is not a learned intermediary for this purpose." *Id.* at *4. In reaching its conclusion, the *Tillet* court emphasized that the requirement to warn extends to those who treat patients, and that the FDA does not treat patients. *See id.* Relying on that reasoning, the Report concluded that there is no duty under New York law for manufacturers to report adverse events to the FDA. R. & R. at 23-24.

The doctrine of "learned intermediary," however, requires that a manufacturer take "adequate" steps to warn medical professionals who use the device in the treatment of patients. *Banker*, 718 N.Y.S.2d at 440. The *Tillet* court reached its conclusion that the duty to notify learned intermediaries does not extend to the FDA because "there is no reasonable assurance that the information will be disseminated to the appropriate professional with the treating relationship to

insufficient to state a claim for negligent failure to warn, and the Court therefore adopts the Report's recommendation to dismiss this claim.

## VII.    Counts Seven through Nine: Negligence and Loss of Services

No party has objected to the portions of the Report recommending that the Motion to Dismiss be denied as to these counts.  Notably, Advanced Bionics did not argue that these claims are preempted.  The Court has reviewed these portions of the Report, and has found no error, clear or otherwise.  Accordingly, these portions of the Report are adopted in full.

## CONCLUSION

For the reasons given above, the Report's recommendations are **ADOPTED IN FULL**. The Motion to Dismiss as to Counts One through Six is **GRANTED**; the motion is **DENIED** as to Counts Seven through Nine.

---

the patient because the FDA is not required to publicly release such reports," and because when it exercises discretion to release reports publicly, "it does so only passively by uploading the reports to an online database."  2023 WL 4704091, at *4.

But this is a rather limited description of the role of the FDA plays in promoting safety.  As the Wieders point out, "[t]he FDA has the power to recall medical devices . . . , to order manufacturers to cease distribution, to notify healthcare professionals and device users, and to take other corrective actions when it finds a reasonable probability that the device would cause serious adverse health consequences or death . . . ."  Pls.' Obj. at 15-16; *see also Rosen*, 41 F. Supp. 3d at 185 ("[T]he FDA publishes adverse events and [Medical Device Reportings] in a public, searchable database called the Manufacturer and User Facility Device Experience ('MAUDE'), which physicians and the general public may access to view safety data on medical devices."). Anyone who has had to throw away a food item like a bag of contaminated lettuce due to an FDA recall understands that the reach of FDA warnings can be, and often is, quite broad.  *See, e.g.*, Jin Yu Young, *F.D.A. Orders Recall of More than 1.5 Million Bags of Shredded Cheese*, N.Y. Times (Dec. 4, 2025), https://nytimes.com/2025/12/04/us/cheese-recall.html [https://perma.cc/XT5T-JAC7].

Given the FDA's role in disseminating health and safety information, this Court is persuaded by the reasoning of the various courts that have held that the duty to take adequate steps to notify medical professionals extends to providing notice the FDA, *see supra*, and therefore declines to adopt a rule that New York law does not provide a cause of action for a manufacturer's failure to report adverse events to the FDA.

The parties are directed to meet and confer within seven (7) days of this Order, and to file a joint status letter within fourteen (14) days of the date of this Order proposing next steps in this litigation before Magistrate Judge Gorenstein. The letter shall address (1) the current status of discovery and what discovery remains to be taken; (2) a proposed case management plan; (3) whether the parties seek a referral to the District's Mediation Program or for a settlement conference before Magistrate Judge Gorenstein; and (4) any other matters that the parties wish to address.

The Clerk of Court is respectfully directed to terminate ECF Nos. 23 and 36.

SO ORDERED.

Dated: March 31, 2026
New York, New York

_____
DALE E. HO
United States District Judge

15